AUGUSTUS PEABODY & another *vs.* SAMPSON TARBELL.

A judgment having been recovered, in the name of A, and with his knowledge and consent, for the benefit of B, execution issued thereon and was extended on land of the judgment debtor, which was set off to A, and possession thereof received by B, as A's attorney, and the land was held and occupied by B, with the knowledge of A, for twenty years and upwards; it was held, that B acquired no legal title to the land by disseizin, upon which a writ of entry could be maintained.

If a judgment be recovered in the name of A, with his knowledge and consent, for the benefit of B, and execution issued thereon be levied on land of the judgment debtor, which is afterwards sold and conveyed by A, and the purchase money

---

received by him, B may recover the same of A in an action for money had and received.

A trust, resulting by implication of law, is not within the statute of frauds (Rev. Sts. *c.* 59, § 30); but may be proved by parol.

Where a judgment was recovered in the name of A, and with his knowledge and consent, for the benefit of B, and execution issued thereon was levied on the land of the debtor, which was set off to A, it was held, that the legal estate in the land thereby vested in A, in trust for B, and that A was bound to release his title therein to B, who might maintain a bill in equity for such conveyance, as the more appropriate and complete remedy: B having brought his bill in equity, in the alternative, either for a conveyance, or for a compensation in damages, and it appearing that A had previously sold and conveyed the land, and received the purchase money, and thereby disabled himself from making a conveyance, it was also held, that B was entitled to recover the amount of the purchase money and interest, or, at his election, a sum equivalent to the present value of the land.

THIS was a bill in equity, filed on the 23d of March, 1844, for a conveyance, or compensation for the value, of certain land therein described. The case, as it appears from the report of *Hubbard*, J., before whom it was heard, was as follows: —

Augustus Peabody and John Tarbell, being the joint owners of a promissory note, made by Robert Douglas, on the 25th of August, 1809, and payable to William Porter, or order, they commenced suit thereon, against both Douglas and Porter, on the 22d of February, 1810, in the name and with the consent of Sampson Tarbell, the defendant, and recovered judgments in both suits at the March term of the court of common pleas, in 1810. The judgments not being satisfied, the creditors, in the year 1820, commenced an action on that against Porter, which was for $69·98, damages, and $7·58, costs, and attached thereon a piece of land as belonging to Porter. Judgment was recovered in this action, at the March term of the court of common pleas, 1820, in the name of Sampson Tarbell, for $125·30, damage, and $8·28, costs; and, on the 3d of April following, and within thirty days after the rendition of the judgment, the land attached (being the land described in the plaintiff's bill) was levied on as the property of Porter, in the name of Sampson Tarbell; and John Tarbell, for himself and Peabody, took possession of the same as the attorney of Sampson Tarbell, the judgment creditor of record under a power of attorney from him. The

land was appraised at $147·58, being the amount of the judgment and the costs of the levy. The suit upon which this judgment was rendered, was commenced without the knowledge of Sampson Tarbell, but the levy was with his knowledge and consent.

John Tarbell, upon the land being levied on as above mentioned, went into possession of the same, fenced, and improved it, and remained in the occupation thereof, until he removed to Pepperell, in the year 1834. Sampson Tarbell, at some time between the year 1837 and the year 1843, but when was not proved, took possession of the land, and, in May, 1842, being an assistant assessor, requested that the land in question should be taxed to him, which was done for that year only. Who paid the taxes after the year 1837, did not distinctly appear, but John Tarbell stated in his deposition, that he paid them up to and including the year 1841.

The defendant admitted by his answer, that he was not the owner of the judgment, to satisfy which the levy was made, and that he paid no part of the costs or expenses attending the suits, or the levy; that Peabody and John Tarbell, in the year 1831, requested him to convey the land to them, and offered him a deed to sign for that purpose; that he then admitted that he had never paid any consideration for the premises, but refused to execute the deed, because, as he said, John Tarbell had unjustly refused to pay him for certain work and labor for which he owed him; that, a few years afterwards, Peabody made a further demand on him for a release, but the time when was not proved; that, on the 17th of March, 1842, John Tarbell (without the knowledge of the defendant) conveyed his interest in the land to his son, Edmund P. Tarbell, one of the plaintiffs; and that on the 3d of April, 1843, the defendant, Sampson Tarbell, by deed, sold and conveyed his right and title in and to the premises to one Samuel Slocomb, as he alleged, for the sum of $300, but without giving the plaintiff any notice of such sale and conveyance.

The defendant set up three grounds of defence, *first*, that

the plaintiff had an adequate remedy at law, either by writ of entry, to recover the estate, or by an action for money had and received; and, *second*, the statute of frauds.

As his *third* ground of defence, the defendant alleged, that Porter had no title to the land levied on, at the time of the attachment and levy, but that it had been previously mortgaged by him to William Watson, in January, 1805; that, in May, 1810, Watson entered for condition broken, and died in 1811; that, afterwards, in May, 1813, Josiah Moore, the administrator of Watson's estate, sold and conveyed Watson's interest in the premises to Jonas Wyeth; that Wyeth died in 1817, and the land in question, being set off to his son, Jonas Wyeth, was conveyed by him, on the 1st of April, 1843, to Samuel Slocomb.

No evidence of possession, except by the recital in Moore's deed to Wyeth, was shown to have been had by Moore, and none by Wyeth or his son. The plaintiff denied the validity of the deeds introduced by the defendant to show an outstanding title, especially the deed from Moore to Wyeth.

The defendant alleged, in his answer, that John Tarbell removed to Pepperell, according to his belief, in 1833, and relinquished possession of the land, which he had previously held from the time of the levy in 1820, and that the defendant, finding the same unoccupied, took possession thereof, fenced and improved the land, and paid taxes thereon, until he sold to Slocomb, in the year 1843.

The defendant paid no consideration for the premises, and claimed no title through Watson or Wyeth, nor any title, except through the levy made for the use of Peabody and John Tarbell.

The land was worth much more than the debt and interest, to satisfy which it was taken in execution.

The plaintiffs claimed a conveyance of the land, or compensation in damages for the value of it; and, if not entitled to that, they then claimed their debt, with compound interest, or annual rests.

Before the filing of the bill, the plaintiffs demanded of the

defendant a release of the land, or payment of the value thereof, or of the sum which he received of Slocomb therefor ; but the defendant refused to comply with either of these requests.

The case was argued at the last October term, by *A. Peabody*, for the plaintiffs ; and *E. Buttrick*, for the defendant.

WILDE, J. At the hearing of this case, several questions were raised for the consideration of the court, the principal of which is, whether the defendant held the land described in the bill in trust for the plaintiffs, as therein charged. It appeared, at the hearing, by the answer, and by evidence, that the plaintiff Peabody and John Tarbell were joint owners of a note of hand against Robert Douglas, payable to William Porter, and indorsed by him ; that Peabody and John Tarbell commenced suits thereon against Douglas and Porter in the name of Sampson Tarbell, and with his consent, and recovered judgments thereon, against the defendants ; which judgments not being paid, the judgment against Porter was sued, in the name of Sampson Tarbell, but for the sole use of Peabody and John Tarbell ; that judgment was recovered thereon, and that the execution, on the last recovered judgment, was afterwards duly levied on the land described in the bill. It further appeared, that before the commencement of this suit, John Tarbell conveyed all his interest in the premises to Edmund P. Tarbell, one of the plaintiffs. These are the material facts, upon which the question of the alleged trust depends. Before stating the opinion of the court upon this question, I will first state their opinion upon a preliminary question raised by the defendant's answer. He objects to the jurisdiction of the court, as a court of equity, on the ground, that the plaintiffs have an adequate remedy at law, either by a writ of entry to recover the estate, or by an action for money had and received, to recover the amount of the money received by the defendant for the release of the premises, as set forth in the answer.

As to the question, whether the plaintiffs have the legal title to the premises, and can maintain a writ of entry, it has

been argued, that they have a title by disseizin, because it is alleged in the bill, that, after the levy, John Tarbell, for himself and Peabody, took possession of the lot, fenced and occupied it, and paid taxes on it, till he sold his interest in it to Edmund P. Tarbell, in the year 1842, a period of more than twenty years. This averment in the bill is expressly denied by the answer, which avers, that John Tarbell, in the year 1833, relinquished the possession of the premises, and that the defendant, finding the land unoccupied, took possession of it in the year 1837, fenced and improved it, and paid taxes on the same, until he sold the land to Slocomb, in the year 1843. If, however, the averment in the bill were true, the possession of the premises by the plaintiffs for twenty years would give them no title by disseizin against the trustee. Tarbell entered as one of the *cestuis que trust*, and with the tacit consent of the defendant; and his legal title was never denied, but was admitted by Peabody and John Tarbell, who, in the year 1831, applied to him for a release to them of the premises.

As to the action for money had and received, that, no doubt, might be maintained, if the defendant held the land in trust, as alleged in the bill. But the plaintiff seeks for a discovery, as well as relief, and claims damages for the breach of trust in addition to the money received of Slocomb. It is true, that in an action at law, a trustee may be liable in damages for a breach of trust ; but where a discovery is sought for, there is no reason for turning the plaintiff over to an action at law for the assessment of damages. And, generally, in cases of trusts, the most plain, complete, and adequate remedy for a party seeking relief is by a suit in a court of equity. And such we consider the most appropriate and complete remedy in the present case.

Then, as to the main question, it is objected, that this is a case within the statute of frauds (Rev. Sts. *c.* 59, § 30), which provides "that no trust concerning lands, excepting such as may arise or result by implication of law, shall be created or declared, unless by an instrument in writing,

signed by the party creating or declaring the same, or by his attorney." There is no such declaration of trust in the present case, and the question is, whether a trust is to be implied from the facts proved. It is objected, that parol evidence cannot be admitted to prove a resulting trust. But the statute applies to express declarations of trusts, and is silent as to the evidence necessary to support a trust resulting by implication of law ; and there seems to be no good reason why facts may not be proved, from which such a trust may be implied, by parol evidence, as in other cases in which parol evidence is admissible ; excluding, of course, the confessions and declarations of the party charged as trustee admitting the trust, which are prohibited by the statute. On this point, however, there have been doubts ; but the established doctrine now is, that parol evidence is admissible in such cases. In the case of *Ryal* v. *Ryal*, 1 Atk. 59, it was decided by lord Hardwicke, that where an estate is purchased in the name of one, and the money paid by another, it is a trust, notwithstanding there is no declaration in writing by the nominal purchaser. And an inquiry was directed in that case, to ascertain whether a part of the purchase money was not so paid by the plaintiff. In the case of *Lloyd* v. *Spillet*, 2 Atk. 150, lord Hardwicke again laid down the same doctrine. So the law is stated to be by chancellor Kent (4 Kent. 305) and by judge Story (2 Story, Eq. § 1201) ; and the doctrine is fully sustained by the authorities cited by them. In the case of *Boyd* v. *M'Lean*, 1 Johns. C. 582, it was held, after an examination of the authorities, that a resulting trust might be established by parol proof, not only against the face of the deed itself, but in opposition to the answer of the nominal purchasers denying the trust. But we are not required to go so far in the present case, in support of the plaintiff's claim ; for the defendant admits in his answer, that he never owned or paid any thing for the Douglas and Porter note ; that he never paid, or was requested to pay, any of the costs and charges of the suits thereon, or of the levy of the execution ; and that, at the request of John Tarbell, he gave him a power of attorney to levy the execution on the

land in question. Upon these facts, and upon the other facts admitted or proved, we have no doubt that the legal estate on the levy of the execution vested in the defendant, as the mere trustee of Peabody and John Tarbell, and that he would be now bound to release his title to the plaintiffs, if he had not disabled himself so to do by his conveyance to Slocomb. The plaintiffs, therefore, are clearly entitled to the purchase money received from Slocomb, with interest, and a decree for that amount may be now entered, unless the plaintiffs insist on their claim for the present value of the land, which, it is said, much exceeds the sum paid by Slocomb and interest. If the plaintiffs should insist on this claim, it will be necessary to direct a further inquiry as to the facts alleged in the defence. It is alleged in the answer, that long before the levy of the execution, Porter mortgaged the premises to William Watson, and that Slocomb derived his title from Watson, and that this mortgage has never been paid. But whether it has been paid or not, we are unable to decide upon the facts reported. If, therefore, the plaintiffs insist on their claim for the present value of the premises, it will be necessary to direct a further inquiry as to the facts relating to the question, whether the mortgage has been paid. But if the plaintiff should waive this claim, he may now have judgment as before stated; for the defendant has no title under that mortgage, and the plaintiffs are entitled to the money received from Slocomb, whether the mortgage has been paid off or not.

A decree was entered, that the plaintiffs were entitled to judgment for the amount received by the defendant, for the sale of the land, with interest thereon, from the time of the sale to the time of entering up the judgment; and execution was issued accordingly for $403, damages, and $80·18, costs.